### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

PATRICK AGUILAR, Individually, and
PETER AGUILAR, Individually and as
Personal Representative of the Estate of
JOSE P. AGUILAR, SR.,

       Plaintiffs,

vs.                                                                    No. CIV 07-1310 JB/LFG

THE UNITED STATES OF AMERICA,

       Defendant/Cross-Defendant,

and

J.B. ROBERTS and RAMONA C. ROBERTS,

       Defendants/Cross-Claimants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants/Cross-Claimants J.B. Roberts

and Ramona Roberts' Motion for Summary Judgment, filed November 5, 2008 (Doc.

15)("Motion").  The Court held a hearing on December 22, 2008.  The primary issue is whether,

under New Mexico law, Defendants/Cross-Claimants J.B. Roberts and Ramona C. Roberts, the

owners of the property where the accident occurred, owed a duty to Jose P. Aguilar, Sr. where the

lease to the United States Postal Service reserved certain powers to the Roberts.  While the Court

finds that the Roberts reserved certain powers to inspect or make repairs, because the United States

and the Roberts, who are the parties to the lease, agree that, under the lease, clearing the sidewalk

would be the United States Postal Services' responsibility, and because there is no evidence that the

Roberts had notice of facts indicating the need to make an inspection or repairs, the Court finds that

they owed no duty to Jose Aguilar to keep the sidewalks clean of snow or of rock salt.  The Court

will accordingly grant the motion for summary judgment.

## FACTUAL BACKGROUND

The United States Postal Service leases the building, the surrounding parking area, driveway, and sidewalks of the Carrizozo, New Mexico Post Office from the Roberts. See Exhibit 1 to Defendants' Memo., Lease at 1 (executed March 31, 1998)(Doc. 16-2). The lease period runs for a fixed term of ten years, beginning October 1, 1999 and ending September 30, 2009. See id.

The incident giving rise to this lawsuit occurred at the Carrizozo Post Office on December 1, 2006. See Memorandum in Support of Defendants/Cross-Claimants J.B. Roberts and Ramona Roberts' Motion for Summary Judgment ¶ 1, at 2, filed November 5, 2008 (Doc. 16)("Defendants' Memo."); Plaintiffs' Memorandum in Support of Plaintiffs' Response to Defendants/Cross-Claimants J.B. Roberts and Ramona C. Roberts' Motion for Summary Judgment ¶ 2, at 2, filed November 18, 2008 (Doc. 19)("Plaintiffs' Memo.")(admitting Defendants'/Cross-Claimants' Fact. No. 2). The Plaintiffs allege that a Post Office employee negligently spread rock salt on the stairs leading into the Post Office following a snow storm. According to the Plaintiffs, the salt was not removed after the snow melted, and, on December 1, 2006, Jose Aguilar slipped on the rock salt on his way into the Post Office and sustained fatal head injuries. See Plaintiffs' Memo. at 1-2. The facts surrounding Jose Aguilar's slip and fall are not, however, the subject of this motion. Instead, this motion calls for the Court to interpret certain terms of the Lease between the United States, as lessee, and the Roberts, as lessors, and to, in turn, determine whether, under New Mexico law, the Roberts owed a duty of care to Jose Aguilar to have the premises in a reasonably safe condition, including the duty to provide an invitee with reasonably safe means of ingress and egress.

The Lease between the United States Postal Service and the Roberts contains a "Maintenance Rider," which allocates responsibility for certain maintenance and repairs between

the two parties to the Lease.  See Lease at M-1.  The Maintenance Rider provides, in part, that:

> The Postal Service is responsible for ordinary repairs to, and maintenance of the demised premises except for those repairs that are specifically made the responsibility of the Lessor in this Lease.  The responsibility of the Postal Service as stated herein will be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises in proper condition.

Lease at M-1.  The Maintenance Rider allocates to the Roberts responsibility for:

> (1) Repairs to all common or joint use areas, common or joint use equipment and fixtures that may be included as part of this Lease.

> (2) All repairs to structural elements and all parts of the room system.  The term "structural elements" as used in this clause is limited to the foundation, bearing walls, floors (not including floor covering), and column supports.  The room system includes, but is not limited to, the roof covering, flashing and insulation.

> (3) Repairs resulting from acts of God, of a public enemy, riot or insurrection.

> (4) Inspection, prevention and eradication of termites and any other wood eating insects and for repairs of any damage resulting therefrom.

> (5) Repairs resulting from defects in building construction or installation of equipment, fixtures, or appurtenances furnished by the Lessor.

> (6) Repairs resulting from fire or other casualties, unless such casualties were caused by the negligence of employees or agents of the Postal Service.

> (7) Any ordinary repairs by the Postal Service which were made necessary by the failure of any element for which the Lessor is responsible.

Id.  The Maintenance Rider also states: "When the need arises for repairs which are the responsibility of the Lessor . . . the Postal Service will (except in emergencies) give the Lessor written notice of the needed repairs and will specify a reasonable deadline for completion of the work."  Id.

## PROCEDURAL BACKGROUND

The Roberts contend that they are entitled to summary judgment because they did not owe a duty to Jose Aguilar.  See Defendants' Memo. at 5.  According to the Roberts, "where a landlord

-3-

fully parts with possession of the premises and retains no control or right of control, he is under no duty to inspect its condition while the tenant remains in possession, and is not accountable with liability for defects not cause by him, or for a failure to make repairs." Id. (citing Mitchell v. C & H Transportation Co., 90 N.M. 471, 474, 565 P.2d 341 (1977). The Roberts maintain that they did not retain control or right of control over the premises, and that, under the Lease, they are responsible only for ordinary repairs and maintenance. See Defendants' Memo. at 6. They argue that there is no evidence that the premises required repairs for which they would have been responsible. See id. The Roberts also contend that they did not retain the right to enter the property to inspect and make repairs, and therefore owed no duty to Jose Aguilar.

The Plaintiffs agree that the Roberts have stated the general rule, as articulated in Mitchell v. C & H Transportation Co., correctly. The Plaintiffs argue, however, that the proper application of that rule in this case compels a finding that the Roberts owed a duty. See Plaintiffs' Memo. at 7. Specifically, the Plaintiffs maintain that, under the Lease, the Roberts were responsible for inspection and repairs under certain circumstances, and that existence of the right to inspect creates a duty on the landowners to have the premises in a reasonably safe condition, with a reasonably safe means of ingress and egress. See Plaintiffs' Memo. at 7.

The Plaintiffs also argue that the Lease is ambiguous in various respects. For example, they state that the Lease lacks language that specifically deals with maintenance responsibilities that would arise as a result of a snow storm or other inclement weather. See Plaintiffs' Memo. at 9. They also contend that the Lease fails to define the scope of the terms "act of God" and "ordinary repairs," and that it does not clearly explain whether actual notice might be sufficient to constitute notice of a need to make repairs pursuant to the Lease at M-1. See Plaintiffs' Memo. at 9. Given the alleged ambiguities in the Lease, the Plaintiffs argue that they are at an unfair advantage until

they can conduct further discovery to substantiate their claims and fully interpret the Lease.

The Plaintiffs note that they have not had the opportunity to discover whether the United States Postal Service requested that the Roberts repair the stairs upon which the incident occurred. See id. According to the Plaintiffs, if the United States Postal Service made such a request and provided proper notice, and if the Roberts did not respond, the Roberts would have violated their duty. The Plaintiffs also maintain that they may have a claim for negligent repair, and that Defendant/Cross-Defendant United States of America might assert that the accident was the result of a facility defect, the repair of which would be the sole responsibility of the lessor. See Plaintiffs' Memo. at 8. Thus, the Plaintiffs argue that dismissal of their claims against the Roberts might render the Plaintiffs unable to fully prosecute their claims against the responsible parties. See id.

In their Reply, the Roberts argue that they did not retain the right to inspect the property in question, and that, under the Lease, the United States Postal Service was responsible for sweeping and maintaining the routes for egress and ingress. See Defendants/Cross-Claimants J.B. Roberts and Ramona Roberts' Reply to Plaintiffs' Response to Roberts J.B. Roberts and Ramona Roberts' Motion for Summary Judgment at 7, filed December 3, 2008 (Doc. 20)("Reply"). The Roberts assert that the Lease is not ambiguous merely because it fails to enumerate every possible required performance. See id. at 9. Rather, the Roberts maintain that terms such as "maintenance" and "repair" should be used in their ordinary meaning "as general terms of understanding." Id. In accordance with that ordinary meaning, the Roberts argue that "sweeping rocks" from a pathway is more properly characterized as maintenance rather than a repair. Id. at 10. They also point out that "snow removing rock salt" does not relate to an act of God. See id. at 11.

The Roberts argue that the duty to inspect mentioned in the Lease relates only to detection and removal of termites or other wood-eating bugs, which would require the hiring of a professional,

and that the Plaintiffs' interpretation of the termites-clause as a general right to inspect is unreasonable and not sensible.  See Reply at 6-7.  According to the Roberts, Mitchell v. C & H Transportation Co., upon which the Plaintiffs rely, is distinguishable from this case, because, in Mitchell v. C & H Transportation Co., the lessor retained a general right to inspect, whereas the Roberts in this case do not have a similar general right.  See Reply at 7.  Instead, the Lease between the United States Postal Service and the Roberts contains only a specialized duty to inspect for termites.

The Roberts state that sufficient facts are present to grant summary judgment.  See id. at 8. They argue that the United States Postal Service has had the opportunity to respond to the motion for summary judgment, and has not presented the argument of a facility defect, which would be the Roberts' responsibility.  The Roberts therefore urge the Court to disregard the argument, because it is made on another party's behalf.

At the hearing, the Roberts argued that New Mexico case law does not establish the existence of a bright-line rule under which a lessor must fully part with all control or right to inspect or to repair to be free of its duty to its tenants' invitees.  See Transcript of Hearing at  3:21:24 (taken December 22, 2008)(Johansen)("Tr.").[1]  Accordingly, they contended that the duty would arise only if the incident related to the reserved rights and responsibilities to inspect and repair  that are mentioned in the Lease.  See Tr. at 5:3-22 (Johansen).  The Roberts state that the Lease provides for a duty to repair "semi-permanent things" associated with the building.  The incident in this case, they argue, arose out of a "transient situation," comparable to a puddle of water.  See id. at 6:7-17 (Johansen).  The Roberts maintain that it would be unfair to impose upon landlords a duty to

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

continually inspect and repair such conditions.

Although the United States did not file any responsive pleadings to the motion for summary judgment, it appeared at the hearing and stated its view that the Lease, while "not a model of clarity on this particular point," indicates that the tenant – the United States Postal Service – is responsible for maintenance. See Tr. at 13:1-3 (Dow). In the United States' view, whether the rock salt should have been swept off is a question relating to regular maintenance. See id. at 13:4-6 (Dow). The United States also noted its view that under Mitchell v. C & H Transportation Co., when a lease is not "completely clear," the landlords could still be held liable. Tr. at 13:15-17 (Dow). The United States conceded, however, that, in this case, removing rock salt from the sidewalk was the United States Postal Service's responsibility. See Tr. at 13:25-14:6 (Dow)

The Plaintiffs maintained their position that, under Mitchell v. C & H Transportation Co., New Mexico has a bright-line rule, under which landlords who do not fully part with the right to inspect retain a duty to their tenants invitees. See Tr. at 16:16-19 (Delgado). The Plaintiffs also pointed out that, while the lease may require notice to trigger the landlord's duty to inspect or repair, it is premature to grant summary judgment at this stage of the case without first allowing the Plaintiffs a chance to finish discovery and to determine whether the requisite notice was given. See id. at 17:15-20 (Delgado). The Plaintiffs noted that the United States did not offer any evidence or affidavits regarding whether the Roberts received a request to repair the stairs or make them more passable in a snow storm. See id. at 18:10-16 (Delgado). The Plaintiffs maintain that, given that the Court must view fact questions in the light most favorable to the non-moving party, it would be inappropriate for the Court to grant summary judgment at this time. See id. at 18:15-15 (Delgado).

The Roberts countered that the Plaintiffs have had plenty of time to conduct an investigation, and that the only allegations in the Complaint and the only evidence uncovered in discovery relate

to placing the rock salt and not removing it in time.  See Tr. at 22:8-13 (Johansen).  The Roberts therefore maintain that the lack of discovery about the potential future allegations should not cause the Court to hesitate in granting summary judgment.  See id. at 22:20-21(Johansen).

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991))(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant meets its burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

-8-

It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990)("[The p]laintiff merely has alleged two isolated statements, one by [one defendant] and one by [another defendant]. "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005 at * 1 (D. Kan. 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005 at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Rule 56(f) of the Federal Rules of Civil Procedure provides:

If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its position, the court may:

(1) deny the motion;

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

Fed. R. Civ. P. 56(f).  The United States Court of Appeals for the Tenth Circuit has explained that the filing an affidavit pursuant to rule 56(f) "is the proper procedure by which to request further discovery prior to the court's ruling on a summary judgment motion." Campfield v. State Farm Mut. Auto. Ins. Co., 532 F.3d 1111, 1124 (10th Cir. 2008).  Litigants who fail to follow this

procedure "waive[] the argument that the grant of summary judgment should be set aside for lack of sufficient discovery."  Id.

### NEW MEXICO LAW[2] REGARDING OWNERS' DUTY TO AN INVITEE

An occupant or owner of premises owes to an invitee a duty to use ordinary care to have the premises in a reasonably safe condition, which includes providing invitees with a reasonably safe means of ingress and egress.  See Mitchell v. C & H Transportation Co., 90 N.M. at 475, 565 P.2d at 346.  New Mexico law also provides that owners or lessors who do not occupy the premises might, in some circumstances, retain a duty to their tenants' invitees.  The Supreme Court of New Mexico has stated:

> The general rule seems well settled that where a landlord fully parts with the possession of the premises and retains no control or right of control over them, and does not thereafter assume control, he is under no duty to inspect their condition while a tenant remains in possession, and is not chargeable with liability for defects not made by him or under his direction or for a failure to make repairs.

Id., 565 P.2d at 346.  The Supreme Court of New Mexico also approvingly noted that it "has been asserted in numerous cases that a reservation of a right to enter to make repairs extends the duty of the landlord to the traveling public, who may be off the premises, to maintain the premises in a safe condition."  Id., 565 P.2d at 346 (citations omitted).

---

[2] The Court notes that the Lease contains a choice-of-law provision, which states: "This Lease shall be governed by federal law."  Lease at A-1.  While federal law governs the Lease, this motion for summary judgment does not involve a dispute between the parties to the Lease.  Rather, the question here is whether the owners of the land subject to the Lease owe a duty to their tenants' invitee, who is not a party to the Lease.  The Lease provisions are important only to the extent that they may or may not give the Roberts sufficient control or rights with respect to the premises that New Mexico law would impose a duty on them.  Accordingly, the Court believes New Mexico law governs the tort question here, and the parties have not argued otherwise.  Indeed, all three parties or groups of parties assumed, in their arguments to the Court, that New Mexico law applies.  See, e.g., Plaintiffs' Memo. at 6 (citing "the general rule in New Mexico"); Defendants' Memo. at 5 (arguing based on New Mexico law); Tr. at 13:15-18 (discussing the United States' position in terms of New Mexico law).

In Mitchell v. C & H Transportation Co., after a driveway which had been allowed to fall into disrepair allegedly caused a car accident, a question arose whether a company that had sublet a portion of the premises to another defendant retained a duty to its tenant's invitees.  See id. at 472, 565 P.2d at 343.  The Supreme Court of New Mexico found that a duty existed, because the lessor reserved a right to enter the premises at any time to inspect and to make repairs and improvements "as it may deem desirable."  Id., 565 P.2d at 343.  In finding a duty, the Supreme Court of New Mexico observed "that a landlord who reserves a privilege which bears directly upon his relation to the passerby has not surrendered or divested himself of the duty of care."  Id. at 475, 565 P.2d at 346.

The Supreme Court of New Mexico refined its rule regarding the scope of owners' and lessors' duty to their tenants' invitees in Gourdi v. Berkelo, 122 N.M. 675, 930 P.2d 812 (1996). The lawsuit in Gourdi v. Berkelo arose when a drainage leak at a J.B.'s Big Boy Family Restaurant created a puddle of water, which caused a waitress to slip and injure herself.  See id. at 676, 930 P.2d at 813.  The premises on which the restaurant was situated were the subject of a lease, under which the tenant was required to "keep and maintain all the Leased Premises, exterior and interior, and the improvements thereon, including the exterior walls, floor joists, and foundations of said building, the asphalt paving, fencing and landscaping, in good condition and repair, and in a safe, clean, attractive and sanitary condition."  Id., 930 P.2d at 813.  The landlord, however, also retained the right to enter, inspect and make repairs.  See id., 930 P.2d at 813.  Specifically, the lease provided: "Landlord reserves the right for Landlord's agents or employees to enter the Leased Premises during normal business hours, to examine the conditions thereof, to repair, protect, improve or add to the Leased Premises and any and all things pertaining thereto."  Id., 930 P.2d at 813.

The Supreme Court of New Mexico in Gourdi v. Berkelo held that a reserved right to inspect, repair, and improve the premises, did not alone give rise to a continuing duty on the landlord to its tenant's employee.  See id. at 679, 930 P.2d at 816.  According to the Supreme Court of New Mexico:

> [W]here, as here, there was no actual knowledge of the alleged dangerous and unsafe condition, and there is *nothing* in the [record] to show or indicate the propriety or *necessity of making an inspection to ascertain the possible or probable existence of any defect*, such as that other people had tripped or fallen [under similar circumstances or in the same area], *ordinary diligence did not as a matter of law, under the facts [as shown], require an inspection* [sufficient to reveal the defect] where the defendant had no reason to think [such] an inspection was necessary.

Id. at 679, 930 P.2d at 816 (quoting Lonard v. Cooper & Sugrue Properties, Inc., 449 S.E.2d 348, 351 (Ga. App. 1994))(quotation marks omitted)(brackets and emphasis in Gourdi v. Berkelo).

The Supreme Court of New Mexico in Gourdi v. Berkelo found it unnecessary to adopt the rule in the RESTATEMENT (SECOND) OF TORTS, which provides: "Except as stated in §§ 357 and 360-362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sub-lessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."  Gourdi v. Berkelo, 122 N.M. at 677, 930 P.2d at 814 (quoting RESTATEMENT (SECOND) OF TORTS § 355).  The Supreme Court of New Mexico found it unnecessary to adopt § 355 because no evidence was offered to establish when the defect occurred.   See Gourdi v. Berkelo, 122 N.M. at 677, 930 P.2d at 814.

While the Supreme Court of New Mexico in Gourdi v. Berkelo declined to adopt the broad rule in RESTATEMENT (SECOND) OF TORTS § 355, it noted: "Imposing an absolute duty on landlords to reenter leased premises and inspect for dangerous conditions could seriously undermine the tenant's right to the use and enjoyment of the premises."  Gourdi v. Berkelo, 122 N.M. at 679, 930 P.2d at 816.  For that reason, "[o]nly when the landlord who has reserved this right has notice of

facts indicating the need to make an inspection should it be charged with knowledge of any dangerous condition that a reasonable inspection would have revealed." Id. at 677, 930 P.2d at 816.

## ANALYSIS

The Court finds that the Roberts retained limited powers to inspect and conduct repairs. While those powers might give rise to a duty under some circumstances, they do not in this case. While the Roberts potentially had the responsibility, under the Lease, to provide certain repairs, the Lease requires that they receive written notice before such a duty is triggered. There is no evidence in the record indicating that the Roberts received any notice, whether written or actual, that would trigger a duty under the Lease or under New Mexico tort law. Under the circumstances presented on this motion for summary judgment, the Court therefore believes that New Mexico law compels a finding that the Roberts did not owe a duty to Jose Aguilar.

## I.     THE ROBERTS RESERVED A LIMITED RIGHT TO INSPECT AND REPAIR THE LEASED PREMISES.

The Supreme Court of New Mexico, in Mitchell v. C&H Transp. Co. recognized that, "a reservation of a right to enter to make repairs extends the duty of the landlord to the traveling public, who may be off the premises, to maintain the premises in a safe condition." 90 N.M. at 475, 565 P.2d at 346. Later case law, however, demonstrates that New Mexico courts have narrowed the scope of a landlord's duties, even when the landlord retains a right to enter, inspect, or make repairs. "Only when the landlord who has reserved this right [to inspect and make repairs] has notice of facts indicating the need to make an inspection should it be charged with knowledge of any dangerous condition that a reasonable inspection would have revealed." Gourdi v. Berkelo, 122 N.M. at 677, 930 P.2d at 816. In light of Gourdi v. Berkelo, it remains relevant whether a landlord has retained the ability to enter, inspect, or make repairs, and a landlord that relinquishes all ability to enter,

inspect, or repair would be relieved of a duty to keep the premises safe.  See Mitchell v. C & H Transp. Co., 90 N.M. at 475, 565 P.2d at 346.  Thus, if, pursuant to their Lease, the Roberts reserved no right to enter, inspect, or make repairs, they would be free of a duty in this case.

After carefully reviewing the Lease, however, the Court finds that the Roberts retained limited rights to enter and inspect the premises.  The Lease lacks clarity on the precise scope of the parties' respective responsibilities for upkeep of the premises.  It is apparent, however, that, while the United States Postal Service is "responsible for ordinary repairs to, and maintenance of the demised premises," certain other repairs are "specifically made the responsibility of the lessor." Lease at M-1.  Moreover, the Lease states that the Roberts not only have the right, but the "responsibility" to make certain repairs, including for "structural elements," common or joint use areas, building defects, fire or other casualties, and ordinary repairs made necessary by the failure of an element for which the Roberts are responsible.  Id.

Despite certain duties to make specific repairs, the Roberts do not appear to have retained a general right to enter and inspect.  The Lease mentions inspection only once: it appears that the Roberts have a responsibility to conduct an inspection for termites, and for "any other wood eating insects and any damages resulting therefrom."  Lease at M-1.  More important, according to the Lease, the Roberts become responsible for carrying out any of the enumerated repairs – likely including inspecting for termites – only after receiving written notice from the United States Postal Service.  See id. at M-1.  The Lease does not appear to permit the Roberts to enter, inspect, or repair the premises independent of the notice process.  Even with possible limitations, however, it is apparent that the Roberts have retained some rights with respect to the leased property.

-14-

**II.     EVEN THOUGH THE ROBERTS RETAINED LIMITED RIGHTS TO ENTER, INSPECT, AND MAKE REPAIRS, THOSE RETAINED RIGHTS DO NOT GIVE RISE TO A DUTY IN THIS CASE.**

The Roberts have a limited ability to inspect or to repair the premises. There is some suggestion in the case law that limitations on the right to enter, inspect, or repair might lead to corresponding limitations on the duty to invitees.  See, e.g., Mitchell v. C&H Transp. Co., 90 N.M. at 475, 565 P.2d at 346 (explaining that "a landlord who reserves a privilege which bears directly upon his relation to the passerby has not surrendered or divested himself of the duty of care.").  In other words, the right to inspect or repair that the landlord reserves defines the landlord's duty to its tenants' invitees.   Under such a formulation, if the Roberts have not reserved any right to maintain sidewalks during snowy weather, they would have no duty respecting the inspection of the sidewalk or the sweeping of rock salt from the entry way.

It is not necessary, however, for the Court to make that determination or resolve any ambiguities in the Lease because the parties to the Lease appear to at least agree that clearing the sidewalks constitutes regular maintenance, which, under the Lease, was the United States Postal Services' responsibility.  At the hearing, the United States openly conceded that the Lease allocated such maintenance to the United States Postal Service, see Tr. at 13:25-14:6 (Dow), and the Roberts have consistently maintained that clearing the sidewalk was the United States Postal Services' responsibility.  Given that the Roberts and the United States Postal Service agree that the Lease requires the United States Post Office to remove rock salt from the sidewalk, the Court does not believe that the Plaintiffs, who are not parties to the Lease, may argue in reliance on an interpretation of the Lease that is contrary to the parties' understanding of that Lease.  Moreover, even if the Court were to assume, as the Plaintiffs urge, a generalized ability to enter and inspect, New Mexico law states that a duty of a landlord with even generalized retained powers to enter and

inspect only arises when the landlord has "has notice of facts indicating the need to make an inspection." Gourdi v. Berkelo, 122 N.M. at 677, 930 P.2d 816. The Plaintiffs have not offered any evidence that the Roberts had notice of facts indicating that they needed to inspect the sidewalk, remove rock salt, or otherwise clear the pathway into the Post Office. There is no evidence in the record of an understanding that, in the event of snow, the Roberts, who have resided in Texas during all relevant time periods, would be in charge of clearing the sidewalk. At the hearing, the United States, as tenant, stated its understanding that clearing rock salt off the sidewalk of the Post Office was the tenant's responsibility. The evidence and common sense suggest that such day-to-day upkeep as sweeping sidewalks or shoveling snow from the entry way would be under the control of the tenant. Even if the Roberts bore some responsibility for such activity, however, the Plaintiffs did not present any evidence that the Roberts had become apprised of a need to perform either the application or removal of rock salt at the time when the incident occurred.

The Supreme Court of New Mexico has explained that a landowner's duty to keep the premises safe is a function of the landlord having control over the premises. See Gourdi v. Berkelo, 122 N.M. at 679, 930 P.2d at 816. A landowner who has control over the premises is better situated than others to discover and remedy dangerous conditions. For that reason, the law imposes liability on landowners for injuries occasioned by dangerous conditions that a reasonable inspection would reveal. See id., 930 P.2d at 816. "When, however, a landowner has relinquished the right to possession under a lease, he or she is no longer in the best position to discover and remedy any dangerous condition – the tenant is." Id., 930 P.2d at 816. In this case, this allocation of the burden of discovery on the tenant is particularly appropriate, given that the landowner resides in another state and is not well situated to monitor whether the Post Office is sweeping its sidewalks or whether it is properly using rock salt.

-16-

While, at first glance, there appears to be some tension between Mitchell v. C & H Transportation Co. and Gourdi v. Berkelo, both cases appear to be good law in New Mexico. While the Court believes that Mitchell v. C & H Transportation Co. is good law, there is good reason to find the facts giving rise to this lawsuit distinguishable from those in Mitchell v. C & H Transportation Co. In Mitchell v. C & H Transportation Co., the site of the wreck was subject to a complex arrangement under which the landowner had leased the entire acreage to a tenant, who in turn assigned the lease to Plateau, Inc., while reserving a portion of the property to operate a café. See 90 N.M. at 472, 565 P.2d at 343. In its sublease, Plateau agreed to keep the premises in good condition. See id., 565 P.2d at 343. Plateau sublet all of the land, with no mention of the café, to another subtenant. In that lease, the subtenant agreed to keep the driveways in good repair and in safe condition. See id., 565 P.2d at 343.

In finding that both Plateau and its subtenant had a duty to the parties who were injured as a result of the alleged failure to maintain or to repair the driveway, the Supreme Court of New Mexico in Mitchell v. C & H Transportation Co. noted that "[b]oth lessees had obligations under the subleases signed by them to keep the premises in good condition." Id. at 474, 565 P.2d at 345. Moreover, Plateau "retained the right to go on the premises to make whatever repairs or changes that it considered necessary." Id. at 475, 565 P.2d at 346. Finally, the Supreme Court of New Mexico found it significant that Plateau and the other parties were engaged in a business venture, that the rent on the leases was paid based on the amount of gasoline sold, and that Plateau reserved the right to operate the café in the event that the party operating it decided to close it. Given those circumstances, the Supreme Court of New Mexico in Mitchell v. C & H Transportation Co. found that "all parties . . . intend[ed] that the entrances to the business would be kept in such condition that there would be no impediment to the patrons gaining access to the pumps and returning to the

-17-

highway." Id. at 476, 565 P.2d at 347. In other words, the rents that Plateau received were tied into the performance of the gas station. Because Plateau had such a direct stake in its tenant's operation, and because it reserved absolute discretion to enter and make repairs, the Supreme Court of New Mexico interpreted the lease arrangements in which Plateau was involved as preserving a duty on Plateau's part.

In this case, there is no relationship comparable to the one that existed in Mitchell v. C & H Transportation Co. The Roberts reserved a narrower set of rights regarding the demised property. Their Lease does not allow them to inspect, repair, or make improvements "as [they] may deem desirable." Mitchell v. C & H Transportation Co., 90 N.M. at 472, 565 P.2d at 343. The Lease bears no indication that their rent is derived from the performance of the Post Office or that the Roberts entertained the possibility of running a related business out of the same property with their subtenant. Instead, the Roberts have a more passive interest in the leased premises, while most of the control over the premises, as well as the incentive and capability of keeping the premises suitable for business on a day-to-day basis, reside with the United States as tenant. It therefore makes less sense to find that Roberts had a duty to its tenants' invitees than it did for the Supreme Court of New Mexico to find that landlord/subtenant Plateau had such a duty in Mitchell v. C & H Transportation Co.

Aside from the factual distinctions between Mitchell v. C & H Transportation Co. and this case, the Court believes that, while not overturning Mitchell v. C & H Transportation Co., the Supreme Court of New Mexico gave a more detailed explanation of the scope of a lessor's duty in Gourdi v. Berkelo. In Mitchell v. C & H Transportation Co., the Supreme Court of New Mexico articulated the general principle that "reservation of a right to enter to make repairs extends the duty of the landlord to the traveling public." 90 N.M. at 471, 565 P.2d at 346. At the same time, it noted

the possible limitation that "a landlord who reserves a privilege which bears directly upon his relation to the passerby has not surrendered or divested himself of the duty of care."  Id., 565 P.2d at 346.

In light of those principles, the Supreme Court of New Mexico in Gourdi v. Berkelo recognized the possible problems associated with defining too broadly the duty of a landowner who does not control the premises.   Landowner liability stems from control over the premises, and in a situation such as the one present in Gourdi v. Berkelo and in this case, where the landlords have relinquished control over the premises and are not actively involved in their upkeep, the tenants are in the best position to inspect the premises and make them safe.  See 122 N.M. at 679, 930 P.2d at 816 ("When, however, a landowner has relinquished the right to possession under a lease, he or she is no longer in the best position to discover and remedy any dangerous condition-the tenant is.").

Thus, the Court finds that the analysis in Gourdi v. Berkelo applies to this case.[3]  Under that analysis, the landlord who has reserved a right to inspect or make repairs may still have a duty, but in cases such as this one, the duty is triggered "[o]nly when the landlord who has reserved this right

---

[3] While the Supreme Court of New Mexico in Gourdi v. Berkelo appears to have narrowed the circumstances under which a landlord has a duty to a tenants' invitees, it did not adopt the rule in the RESTATEMENT (SECOND) OF TORTS, which states that, except under certain circumstances, which do not apply in this case, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sub-lessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."  RESTATEMENT (SECOND) OF TORTS § 355.  The  RESTATEMENT (SECOND) OF TORTS rule, which is likely grounded in the notion of control, appears to be less generous to Plaintiffs than the New Mexico rule.  Thus, if the Supreme Court of New Mexico were to adopt the  RESTATEMENT (SECOND) OF TORTS rule, the result in this case would be consistent with the rule.  The allegedly dangerous condition arose during the United States Postal Services' tenancy, rather than before the United States Postal Service took possession.  The  RESTATEMENT (SECOND) OF TORTS rule would therefore compel a finding that the Roberts are not subject to liability to their lessee.  Because the New Mexico Supreme Court has not adopted  § 355 of the RESTATEMENT (SECOND) OF TORTS, it is unnecessary to apply the rule to this case.  It is sufficient to note that this Court's analysis in this case is not inconsistent with § 355.

has notice of facts indicating the need to make an inspection. . . ."  Gourdi v. Berkelo, 122 N.M. at

679, 930 P.2d at 816.[4]  Because there is no evidence that the Roberts had notice of a need to make

a repair to the sidewalk where the incident occurred, the Court finds that they did not have a duty

to Jose Aguilar, who was the United States Postal Service's invitee.  Given that the Roberts did not

owe a duty in these circumstances, the Court will grant summary judgment in their favor and dismiss

the claims that the Plaintiffs have brought against them.

Plaintiffs also argue that this motion for summary judgment is premature, because they need

to conduct discovery, and because dismissal at this point would potentially impede them from fully

prosecuting their claims against the responsible parties.  Related to this argument, the Plaintiffs

argued at the hearing that the Roberts did not offer any affidavits or evidence regarding whether the

United States Postal Service requested repairs to the stairs or otherwise gave notice of a need for

repairs.  See Tr. at 18:10-16.

While it is true that the Roberts have not provided such evidence or affidavits, the Court

believes that the Plaintiffs misconstrue the standard for summary judgment.  The movant on

summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to

support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891.

When the moving party points out the absence of evidence, it is the non-movant's – in this case, the

Plaintiffs' – job to set forth specific facts showing that there is a genuine issue of material fact.  See

---

[4] The Court can imagine a situation where Gourdi v. Berkelo might not control.  For
example, a lease might not grant a landlord a general rights to enter, inspect, and make repairs, but
may nevertheless contain an express reservation of the right to, for example, clear sidewalks in the
event of inclement weather.  The Court is not certain that the Supreme Court of New Mexico would
find that a landlord without notice has no duty to invitees where the landlord made such a specific
reservation in the lease.  Given that the Lease between the United States Postal Service and the
Roberts does not make such a specific reservation, the Court need not decide that question.

Celotex Corp. v. Catrett, 477 U.S. at 324.  In other words, it is sufficient for the Roberts to point out that the Plaintiffs failed to provide evidence that the Roberts had notice.  The Roberts have done so, and the Plaintiffs have not been able to point to specific facts, by affidavit or otherwise, to rebut the Roberts' showing.

The Plaintiffs have not filed a motion or affidavit, pursuant to rule 56(f) of the Federal Rules of Civil Procedure.  Rule 56(f) provides:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its position, the court may:
>> (1) deny the motion;
>>
>> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>>
>> (3) issue any other just order.

Fed. R. Civ. P. 56(f).  Because the Plaintiffs have not followed the procedure prescribed in rule 56(f), they have "waived the argument that the grant of summary judgment should be set aside for lack of sufficient discovery."   Campfield v. State Farm Mut. Auto. Ins. Co., 532 F.3d at 1124.  The Court therefore believes that the motion for summary judgment is appropriately before the Court and that the Court has the information necessary to make a ruling on it.  The Roberts are entitled to a ruling on their motion.  Given the legal principles in New Mexico governing the duty of lessors, the Court finds that the Roberts had no duty to Jose Aguilar.  Rather than delaying summary judgment at this point, the Court believes that the Plaintiffs may approach the Court if, at a later time, new evidence comes to light that suggests that a genuine issue of material fact exists.

**IT IS ORDERED** that Defendants/Cross-Claimants J. B. Roberts and Ramona Roberts' Motion for Summary Judgment is granted.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Victor F. Poulos
Mateo Delgado
Volk, Poulos & Coates, L.L.P.
El Paso, Texas

       *Attorneys for the Plaintiffs*

Gregory J. Fouratt
  United States Attorney
Phyllis A. Dow
  Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Defendant/Cross-Defendant The United States of America*

James H. Johansen
Minerva C. Camp
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

       *Attorneys for the Defendants/Cross-Claimants J. B. Roberts and Ramona Roberts*